## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3147 | **DATE** | Nov. 4, 2002 |
| **CASE TITLE** | Richard Berg, et al    v    Diane Strickland, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 12/19/02, at 9:00 a.m.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]

Memorandum opinion and order entered. Accordingly, defendants' motion to dismiss is denied. Plaintiffs are granted leave to file an amended complaint within 21 days. Defendants shall respond within 21 days thereafter.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | NOV 05 2002 | |
| | Notified counsel by telephone. | | date docketed | 11 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RICHARD BERG, SHEILA ALLEN, and )
LLOYD WRIGHT, )
)
Plaintiffs, )
) No. 02 C 3147
v. )
) Judge Robert W. Gettleman
DIANE STRICKLAND and LOCAL 743, )
INTERNATIONAL BROTHERHOOD OF )
TEAMSTERS, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Richard Berg, Sheila Allen and Lloyd Wright, members of Local 743 of the International Brotherhood of Teamsters (the "Local"), filed a two-count complaint against the Local and its Secretary Treasurer, Diane Strickland. Count I alleges a violation of the union members' equal right to vote as protected by Title I of the Labor and Management Reporting and Disclosure Act ("LMRDA") 29 U.S.C.A. § 101(a)(1). Count II alleges that Strickland breached her fiduciary duty under state law.

All allegations emanate from a union election held in November 2001, in which plaintiff Berg was a candidate for President of the Local. During that election, Berg filed twelve pre-election protests with the local, pursuant to the union's by-laws. After the election, Berg filed a post-election protest with the union. Berg then filed a complaint with the Secretary of Labor, who made a preliminary finding that there were two violations of the LMRDA, but did not make a final determination, and did not pursue legal action against the Local. Plaintiffs then filed this action. Defendants have moved to dismiss, arguing: 1) that both counts of the complaint are

preempted by Title IV of the LMRDA, depriving this court of subject matter jurisdiction; and 2) that plaintiffs failed to exhaust internal remedies. For the reasons set forth below, the motion is denied.

## Background

Berg was a candidate for president of Local 743 in its election held on November 3, 2001. The election was conducted through ballots that were mailed to the Local's 13,576 members. Ballots mailed to incorrect addresses were to be returned to one post office box, while ballots returned by voting members went to another post office box. Based on his campaigning experience, Berg alleges that the Local's mailing list had more than 400 incorrect addresses. Each of the three plaintiffs did not receive an initial ballot, and plaintiff Wright never received a replacement ballot. However, there were no returned ballots in the post office box designated for undeliverable mail. Plaintiffs infer that an unauthorized member of the Local took the undelivered ballots from the post office box, and may have fraudulently used the ballots in the election.

Plaintiffs allege that this conduct in the completed fall 2001 election and the continued failure of the union to maintain an updated mailing list, along with the Local's unwillingness to restructure its election process for future elections, has had a chilling effect on future political activities and has deprived some union members of their equal right to vote as protected by § 101(a)(1) of Title I of the LMRDA. Plaintiffs further allege that as secretary treasurer, Strickland had a fiduciary duty to the Local's members, and that she breached this duty when she failed to take safeguards to ensure that undelivered ballots could not be fraudulently used.

In their prayer for relief, plaintiffs request: (1) a declaration that their Title I rights were violated in the 2001 election; (2) a declaration that defendants' conduct in the 2001 election had a chilling effect on future political activities; (3) an order compelling defendants to give plaintiffs access to election records; (4) an order requiring defendants to maintain an updated and current membership list and to provide safeguards for future elections; (5) an order requiring Strickland to give a written accounting of what occurred to the ballots in the 2001 election; and (6) attorney fees and court costs.

## Discussion

Defendants have moved to dismiss plaintiffs' claim for lack of subject matter jurisdiction, arguing that both counts of the complaint are preempted by Title IV of the LMRDA. Plaintiffs argue that they have pled a cognizable claim under Title I that is not preempted by Title IV. Disputes often arise in this area because of the overlap between Title I and Title IV of the LMRDA. Local No. 82, Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehousemen and Packers, et al. v. Crowley, 467 U.S. 526, 534 (1984).

Title I grants union members a "Bill of Rights" including equal protection in the union's political processes. 29 U.S.C. § 411(a)(1); Id., at 528. The general purpose of Title I's Bill of Rights is to ensure a democratic process within the union. Finnegan v. Leu, 456 U.S. 431, 435 (1982). On the other hand, Title IV specifically governs union elections, and it "provides an elaborate post-election procedure aimed solely at protecting union democracy through free and democratic elections." Crowley, 467 U.S. at 528. Title IV requires elections by secret ballot, requires certain nominating procedures, and regulates various other aspects of elections for union officers. Calhoon v. Harvey, 379 U.S. 134, 140 (1964).

The enforcement measures for a Title I violation are set forth in Section 412 of LMRDA, 29 U.S.C. § 412. If a union member's equal protection right to participate in the union's political processes is violated, the union member has a private right of action, and a federal district court has jurisdiction to grant an "appropriate remedy". 29 U.S.C. § 412; 29 U.S.C. § 102; Crowley, 467 U.S. at 537.

Under Title IV, however, only the Secretary of Labor may bring a court challenge if the Secretary determines that there has been a violation. 29 U.S.C. § 482. Any union member may initiate the process that results in the Secretary's Title IV court challenge. 29 U.S.C. § 482(a). Importantly, the remedy provided by Title IV "for challenging an election already conducted shall be exclusive." 29 U.S.C. § 483.

Defendants, relying primarily on Crowley, assert that because the basic thrust of plaintiffs' allegations relate to the completed election, the complaint alleges a Title IV claim not within this court's jurisdiction. Plaintiffs, also relying primarily on Crowley, assert that because they request only declaratory and future relief, and do not seek to invalidate the already completed election, they have stated a cognizable Title I claim not preempted by Title IV.

As parties recognize, Crowley is the starting point for any analysis of the overlap of Title I and Title IV. In Crowley, individual union members brought suit arguing that their Title I rights to equal protection were violated by the union when the members were denied admission to a union meeting called to nominate candidates because the members could not produce a computerized receipt showing that their union dues had been paid. The members filed a protested with the union, which was denied. Election ballots were distributed. The members then filed suit in federal district court, after the ballots had been sent, but prior to the last date on

which the ballots could be returned for counting. The district court entered a temporary restraining order, halting the election. After lengthy but futile attempts to negotiate a settlement, the district court ultimately held that Title I remedies were not foreclosed when Title I violations occurred during the course of an election, and rejected the union's argument that the members' exclusive remedy was to file a complaint with the Secretary under Title IV. The court issued a preliminary injunction, declared the interrupted election invalid, and set forth detailed procedures to be followed during a new election. The Court of Appeals affirmed in all respects.

After acknowledging the overlap of rights protected by Title I and IV, the Supreme Court reversed, concluding that the district court had "overstepped the bounds of 'appropriate' relief under Title I of the LMRDA when it enjoined an ongoing election and ordered a new election to be held pursuant to court-ordered procedures." Crowley, 467 U.S. at 551. In reaching this conclusion, the Court began by examining Title I's jurisdictional provision, 29 U.S.C. § 412, which provides:

> Any person whose rights secured by the provisions of this Title have been infringed by any violation of this Title may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate.

As noted by the Court, this jurisdictional provision suggests that an individual union member may maintain a Title I suit whenever rights guaranteed by the Title have been violated. Id. at 538. Only the relief available is tempered, limited to that which is "appropriate" to any given situation. Id. Despite this broad language, the Court noted that Title I could not be read in a vacuum, and went on to review the exclusivity provisions of Title IV and the legislative history of the two titles. That history indicated Congress's clear intent to consolidate challenges to union elections with the Secretary, and to have the Secretary supervise any new elections necessitated

5

by violations of the Act. The Court thus concluded thus, "even when Title I violations are properly alleged and proved, Congress would not have considered a court order requiring and judicially supervising a new election to be 'appropriate' relief under Title I." Id. at 543. The Court found nothing in the legislative history, however, suggesting that Congress intended to foreclose all access to district courts under Title I during an election, particularly when a statutory violation could be corrected without any major delay or disruption to the ongoing election. Id. The Court concluded, therefore, "whether a Title I suit may properly be maintained by individual union members during the course of a union election depended upon the nature of the relief sought by the Title I claimants." Id.

As is evident from the discussion in Crowley, the Court found that it was only the invalidation and subsequent court supervision of an election that intruded on the exclusive province of the Secretary under Title IV. "For less intrusive remedies sought during election, however, a district court retains authority to order appropriate relief under Title I." Id. at 550. For example, the Court specifically noted that a district court would have jurisdiction over a union members' claims that they did not receive election ballots distributed by the union because of their opposition to the incumbent officers running for reelection, because the court could appropriately order the union to forward ballots to claimants before completion of an election. Id. at 546.

In the instant case, all of the complained of violations occurred during the November 2001 campaign and election. Plaintiffs' rights, if violated at all, were violated during that election. Obviously, under Crowley this court cannot grant plaintiff any relief that would necessarily invalidate the election. Nor can the court supervise or impose restrictions on the

union's conduct during the next election. That is the exclusive province of the Secretary under Title IV.

That does not mean, however, that the court lacks jurisdiction over all of plaintiffs' case. Under Crowley, short of invalidation or supervision, the court has jurisdiction to award plaintiffs appropriate relief, including injunctive relief, for established violations of their Title I rights, even if those violations occurred during the course of an election. Thus, the court has jurisdiction to hear those portions of plaintiffs' complaint that seek to prevent recurrence in the next election of what they claimed to have been Title I violations in the past election. As the Supreme Court succinctly stated, "the plain language of the Act clearly establishes . . . [that] the full panoply of Title I rights is available to individual union members prior to the conduction of an union election." Crowley, 467 U.S. at 541. Assuming the plaintiffs have alleged an actual case or controversy, i.e., that the union continues to maintain out-of-date mailing lists, and that the failure to maintain updated lists violates Title I, the court has jurisdiction over the case.[1] Accordingly, defendants' motion to dismiss for lack of subject matter jurisdiction is denied.[2]

The court dismisses, however, those prayers for relief that seek to effectively invalidate the 2001 election. These include plaintiffs' demands for declarations of violations of the LMRDA and their request for an "accounting" by defendant Strickland. Plaintiffs are entitled, if

---

[1] The court also rejects defendants' argument that plaintiffs have not exhausted administrative remedies. The need to exhaust intr-union administrative remedies is a discretionary, rather than a mandatory jurisdictional bar. Kinslow v.Bristoe, 130 F. Supp.2d 965, 972 (N.D. Ill. 199). Plaintiffs have alleged that they filed over 12 protests to the challenged conduct, all of which were denied. The court sees no reason to require what would appear to be further futile acts.

[2] Because defendants' attack on plaintiffs' state law claim in Count II is also based on Title IV preemption, the motion to dismiss Count II is also denied.

7

they succeed in proving their claims, only to relief that would prevent future violations of their Title I rights.

## Conclusion

For the reasons set forth above defendants' motion to dismiss for lack of subject matter jurisdiction is denied. Plaintiffs are direct to submit an amended complaint conforming to this opinion within 21 days of the date hereof; defendants shall respond within 21 days thereafter. This matter is set for a report on status December 19, 2002, at 9:00 a.m.

**ENTER:** **November 4, 2002**

_____
**Robert W. Gettleman**
**United States District Judge**